IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRIAN A.H.,[1]
    Plaintiff,

          v.                                Civil No. 3:20-cv-00654 (JAG)

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act (the "Act").

Plaintiff, forty-three years old at the time of his benefits application, has a high school education and last worked as a trucker. (R. at 98, 106-7, and 170.) Plaintiff suffers from migraines, shoulder, and hip pain. (R. at 172.)

On August 7, 2019, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (R. at 26.) After exhausting his administrative remedies, Plaintiff now seeks review of the ALJ's decision. Plaintiff argues that the ALJ erred by: (1) denying Plaintiff's claim at Step Two of the *Craig* analysis by not properly accounting for Plaintiff's pain, and improperly considering Plaintiff's prior illegal drug use; (2) rejecting the medical opinion of John Glub, MD

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

("Dr. Glub"); and (3) rejecting the medical opinion of Nancy Foley, FNP ("Nurse Foley"). (Mem. Supp. Pl.'s Mot. Summ. J., 4-11, ECF No. 24-1 ("Pl.'s Mem.").)

This matter comes before the Court pursuant to 28 U.S.C. § 636(c)(1) on cross motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, and for the reasons set forth below, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 22) and Plaintiff's Motion to Remand (ECF No. 23) be DENIED; (2) Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED; and (3) the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On September 25, 2017, Plaintiff filed an application for disability insurance benefits alleging disability beginning July 20, 2017. (R. at 16, 98, 112.) The Social Security Administration ("SSA") initially denied this claim on May 21, 2018 (R. at 16, 98-108) and again upon reconsideration on June 6, 2018. (R. at 16, 111-121.) At Plaintiff's written request, the ALJ held a hearing on July 13, 2018, at which a vocational expert testified, as well as Plaintiff, who was represented by counsel. (R. at 136, 32-59.) On August 7, 2019, the ALJ issued a written opinion holding that Plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision. (R. at 16-26.) Plaintiff petitioned the SSA Appeals Council to review the decision. (R. at 154-156.) On July 20, 2020, the SSA Appeals Council denied his request for review, rendering the

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

ALJ's decision as the final decision of the Commissioner. (R. at 2-6.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court

3

disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On August 7, 2019, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 16-26.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 17-26.)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from July 20, 2017 through the date of the ALJ's opinion.[4] (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "migraine; osteoarthritis of the right hip and mild degenerative changes of the cervical spine . . .." (R. at 18.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

After step three, the ALJ considered Plaintiff's residual functional capacity.[5] (R. at 19-24.) The ALJ found after reviewing the entire record that Plaintiff had the following residual functional capacity:

---

[4] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must

> To perform light work, as defined in 20 CFR 404.1567(b), except: stand for four hours in an eight-hour workday; must be allowed to alternate between standing and sitting, every 30 minutes to one hour, as needed, while remaining on-task; occasionally push and pull with the right leg; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, ladders, ropes, and scaffolds; occasional exposure to vibration and hazards; must work in an environment with a moderate noise intensity level or quieter, as the Selected Characteristics of Occupations (SCO) defined that term (i.e. light traffic, grocery store, department store); must work in an environment with levels of illumination similar to that found in a typical office setting; individual must avoid all exposure to work in sustained, direct sunlight.

(R. at 19-20.) Based on this determination, the ALJ considered at step four of the analysis whether Plaintiff could perform his past relevant work as a trucker, at least in the manner in which such work is generally performed.[6] (R. at 24.) The ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 24.) The ALJ based her conclusion on her review of the record as well as the testimonies of Plaintiff and a vocational expert at the hearing. (R. at 24.) The ALJ continued to step five and determined that, when taking into account Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (R. at 25-26.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 26.)

---

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

[6] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ did not apply the correct legal standards when forming her conclusion. (Pl.'s Mem. at 4-11). Specifically, Plaintiff contends that the ALJ erred when she: (1) failed to account for Plaintiff's physical pain and improperly considered Plaintiff's illegal drug use; (2) rejected the opinion of Dr. Glub; and (3) rejected the opinion of Nurse Foley. (Pl.'s Mem. at 4-11).

**A. The ALJ Properly Assessed Plaintiff's Subjective Complaints of Pain.**

Plaintiff argues that the ALJ did not properly assess Plaintiff's subjective pain when considering his migraines under step two of the *Craig* analysis. (Pl.'s Mem. at 4-8, 10). Plaintiff contends that the ALJ overestimated Plaintiff's daily activities, erroneously found that his migraines were controlled, and impermissibly considered evidence of Plaintiff's prior illegal drug use when weighing his credibility. (Pl.'s Mem at 4-8, 10). Defendant responds that the ALJ appropriately assessed Plaintiff's subjective complaints of pain in accordance with the regulations, and that substantial evidence supports the ALJ's evaluation. (Def.'s Mot. Summ. J. at 16-21 ("Def.'s Mem").).

When assessing the claimant's residual functional capacity in situations where the claimant alleges disabling pain, the ALJ conducts a two-step *Craig* analysis. 20 C.F.R. § 404.1529(b); *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ first determines whether "objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (internal citations and quotations omitted). The ALJ does this by discussing the "claimant's functional limitations discernable from the relevant evidence in the record" and by "examin[ing] the relevant evidence in the record, determin[ing] from that evidence whether the

7

claimant has any functional limitations, and, if any functional limitations are found, factors those limitations into the residual functional capacity assessment." *Deloatch v. Comm'r of Soc. Sec.*, 2009 WL 2475260 (E.D. Va. Aug. 10, 2009) (internal citation omitted). Once the ALJ has found a medically determinable impairment, she then "asses[es] the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Arakas*, 983 F.3d at 95.

At step one of the *Craig* analysis, the ALJ examined Plaintiff's medical history and found that his medically determinable impairments (migraines, osteoarthritis of the right hip, and mild degenerative cervical spine changes) could reasonably be expected to produce his alleged symptoms. At her step two analysis, the ALJ uses the following factors, in addition to all the evidence, to evaluate intensity, persistence, and limiting effects of Plaintiff's symptoms, such as pain:

(1) Daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

(6) Any measures other than treatment used to relieve pain or other symptoms; and

(7) Any other factors concerning an individual's functional limitations and restrictions caused by pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. at 20.)

1. *The Objective Medical Evidence.*

First, the ALJ considered objective evidence pertaining to Plaintiff's right hip pain. Plaintiff sought follow-up treatment from Dr. Neel Patel ("Dr. Patel") in January 2019 for hip right pain. At that appointment, Dr. Patel noted that Plaintiff's radiology images of his right hip from June 2018 showed aging hardware from a surgery in the late 1990s. (R. at 299.) Dr. Patel referred Plaintiff to Dr. Joseph Campbell ("Dr. Campbell") to address his hip pain. (R. at 299.) Dr. Campbell physically examined Plaintiff in February and March 2019 and found moderate tenderness in Plaintiff's lower back and right hip, with normal sensation, full strength, and normal reflexes throughout. (R. at 276, 279.) Dr. Campbell assessed Plaintiff with lumbago and primary localized osteoarthritis of the right hip, and prescribed medication for pain. (R. at 279.)

Second, the ALJ was presented with objective evidence related to Plaintiff's migraine headaches. Plaintiff reported migraine without aura during his visit with Dr. Patel in January 2019, and he treated for them with a neurologist in February 2019. At that neurology appointment, he reported experiencing migraines three-to-five times per week with nausea and light sensitivity. (R. at 293.) Upon physical examination, Plaintiff exhibited normal movement, strength, reflexes, and sensation to touch, vibration, and temperature. (R. at 294.) He was prescribed medication and told to return if his symptoms worsened. (R. at 294-95.) Upon returning in April 2019, his examination

9

findings remained the same, and he again treated with medication and was told to return if the symptoms worsen. (R. at 289-90.)

The ALJ accounted for Plaintiff's hip and migraine pain based on the objective evidence when she determined Plaintiff's postural limitations. For example, the ALJ restricted Plaintiff's standing by allowing for a sit/stand option and reduced use of the right leg in accordance with the right hip joint tenderness and antalgic gait favoring the right leg. (R. at 249, 261, 312.) She also considered Plaintiff's migraines when she included environmental limitations to account for Plaintiff's sensitivities to noise, sound, and light. (R. at 22.) Thus, the ALJ found that the objective evidence in the record supported her finding that Plaintiff can perform a range of light work with certain limitations to accommodate his hip pain and migraine pain. (R. at 24-26.)

        2.    *Plaintiff's Subjective Reports of Pain.*

The ALJ considered the evidence supporting Plaintiff's subjective reports of hip pain and pain from his migraine headaches. As to the latter, Plaintiff testified that "my hip is bad, but the migraines are the worst part of my life." (R. at 43.) He reported sensitivity to light and noise, nausea, pain, ringing in his ears, and dizziness. (R. at 289, 29.) He also experiences numbness in his arms at night and in the morning, which goes away within a few hours. (R. at 289, 293.) He told the ALJ that his migraines make it difficult for him to get out of bed during the day and to spend time with his infant daughter. (R. at 38.) The ALJ also considered Plaintiff's subjective reports of pain in his right hip. He described a popping sensation that at times "feels like it's going to catch . . .." (R. at 40.) He testified that he elevates his feet throughout the day and stretches out by laying flat on the carpeted floor. (R. at 40.) His orthopedist, Dr. Campbell, wants him to "wait as long as [he] can manage the pain" to get surgery because he will likely need to have it a third time at some point in the next fifteen years. (R. at 41.) Plaintiff told the ALJ that he can stand for

about thirty to forty-five minutes before he gets uncomfortable and can only sit down for about thirty minutes before he feels he needs to turn or adjust. (R. at 41.) He reported that the pain in his hip gets better after receiving an injection, but he remains aware of it at all times. (R. at 42.)

> 3. *The ALJ's Findings Using the Craig Analysis Were Not in Error.*

After considering the objective and subjective medical evidence, the ALJ noted inconsistencies between the medical records articulated above and Plaintiff's statements. For instance, Plaintiff affirmed he is able to: (1) care for his daughter; (2) prepare light meals; (3) do some yard work; (4) clean; (5) complete light chores; (6) drive a car; (7) eat at restaurants; (8) shop in stores; and (9) manage his day-to-day needs. (R. at 21-22, 38, 193, 259.) In Plaintiff's consultative examination with Dr. Steve Hansen ("Dr. Hansen"), Plaintiff denied having any significant problems performing activities of daily living, which he completed without assistance. (R. at 21-22, *citing* R. at 259.)

Further, Plaintiff managed his pain conservatively, which consisted largely of medication and injections. (R. at 22.) He regularly received refills of his migraine-controlling medication, which he reported as being helpful in managing his pain at least 75% of the time. (R. at 259.) On July 21, 2018, Dr. John Lee noted that Plaintiff had a gait disturbance and needed to use an assistive device. (R. at 272-73.) However, at Plaintiff's later appointments, his doctors noted that he exhibited a normal gait and did not use an assistive device. (R. at 276, 278, 282, 290.)

In addition to his medication and injections, Plaintiff's providers had not recommended more aggressive interventions to alleviate his symptoms. (R. at 22.) For instance, Plaintiff had not undergone surgery for his right hip, nor had he done physical therapy. (R. at 22.) The ALJ found

that this was inconsistent with Plaintiff's assertion that he can no longer work due to the pain brought on by his hip and migraines. (R. at 21.)

Therefore, the ALJ's symptom evaluation analysis was consistent with applicable case law and appropriately supported. *See Hawley v. Colvin*, No. 5:12-cv-260-FL, 2013 U.S. Dist. LEXIS 167211 at *15 (E.D.N.C. Nov. 25, 2013) (recognizing that an ALJ need not accept the claimant's allegations at "face value"). Consequently, though Plaintiff may disagree with the ALJ's view of the evidence concerning his migraine headaches and hip pain, the record does not indicate that the ALJ failed to consider and account for Plaintiff's headaches in formulating the residual functional capacity assessment.

### 4. The ALJ Did Not Err by Referencing Plaintiff's Prior Drug Use.

Plaintiff contends that the ALJ committed legal error by referencing in her decision that there was "possible evidence of illicit substance use" and noting that Plaintiff's medical records showed that he tested positive for cocaine and opiates in a June 2017 drug screening. (R. at 22, citing R. at 249-50.) Plaintiff argues that the ALJ improperly considered Plaintiff's prior drug use when determining Plaintiff's credibility because "illegal drug use does not implicate a person's honesty." (Pl.'s Mem. at 7).

However, Plaintiff testified during his hearing that he does not use illegal drugs, nor has he ever used illegal drugs. (R. at 37.) In social security disability proceedings, the standard for giving great weight to the ALJ's determination of the claimant's credibility may be applied where the ALJ finds that the claimant's testimony is inconsistent with the underlying medical records. *See Cameron v. Chater*, 56 F.3d 60 *2 (4th Cir. 1995.) In this case, the laboratory finding which showed Plaintiff's positive urine drug screen for opiates and cocaine was contained within the record and available for the ALJ to consider in her analysis of Plaintiff's reported impairments.

(R. at 249-50.) Plaintiff's testimony was inconsistent with this part of the medical record, and the ALJ simply noted this inconsistency in her decision. (R. at 22.) Therefore, the Court finds no legal error in the ALJ's evaluation of this evidence.

### B. The ALJ Properly Evaluated the Medical Opinions.

Under the regulations,[7] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1) – (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive" the medical opinion will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent" a medical opinion is with "evidence from other medical sources and nonmedical sources," the more persuasive the medical opinion will be. *Id*. § 416.920c(c)(2).

The ALJ may explain her consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id*. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id*.

---

[7] Because Plaintiff filed his disability claim after March 27, 2017, § 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

*1. Dr. Glub's Opinion.*

Plaintiff argues that the ALJ erred by rejecting Dr. Glub's opinion because, contrary to the ALJ's finding, Dr. Glub's opinion is supported by the record and consistent with Dr. Hansen's independent examination. (Pl.'s Mem. at 8-9). Defendant responds that the ALJ appropriately assessed the persuasiveness of Dr. Glub's opinion in accordance with the new regulations promulgated in 2017 for evaluating opinions. (Def.'s Mem. at 22).

After reviewing the evidence, the ALJ found that Dr. Glub's opinion was not fully persuasive because it was not supported by the record. (R. at 23.) Plaintiff asserts that the ALJ erred by arguing that Dr. Hansen's independent examination corroborated Dr. Glub's opinion on Plaintiff's reduced range of motion in his right hip. (Pl.'s Mem. at 8-9).

Under the substantial evidence standard of review, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings." *Risner v. Comm'r Soc. Sec.*, 2020 U.S. Dist. LEXIS 168482, *28, 2020 WL 6276536 (citing *Brown v. Colvin*, No. 5:15-0321, 2016 U.S. Dist. LEXIS 111237, *6 (D.S.C. Aug. 22, 2016), *aff'd* 675 F. App'x 336 (4th Cir. 2017)).

The record indicates that both Dr. Hansen and Dr. Glub opined that Plaintiff did not have full range of motion or full strength in his lower extremities. However, the doctors' opinions differ in their estimated impact of such upon Plaintiff's limitations. Dr. Hansen concluded that Plaintiff could sit, stand, and walk a total of six out of eight hours. (R. at 264.) While Dr. Glub concluded that Plaintiff could only sit for two hours and stand/walk for two hours in an eight-hour workday. (R. at 273.)

Further, the ALJ found that Dr. Glub's opinion was not consistent with other examinations in the record, which note that Plaintiff had a normal range of motion and he exhibited full strength.

14

(R. at 244, 261, 279, 208, 290, 294.) Accordingly, substantial evidence supports the ALJ's consideration of Dr. Glub's opinion.

    *2. Nurse Foley's Opinion.*

Plaintiff argues that the ALJ erred when she rejected the medical opinion of Nurse Foley. (Pl.'s Mem. at 9-10). Specifically, Plaintiff alleges that the medical evidence demonstrates he has frequent, intense migraines and that the ALJ improperly disregarded Nurse Foley's limitations because the objective medical evidence was not supportive. (Pl.'s Mem. at 9).

Plaintiff also contends that the ALJ did not account for the time off task caused by his migraines. In response, Defendant states that the ALJ correctly evaluated the persuasiveness of Nurse Foley's opinion in accordance with the regulations. (Def.'s Mem. at 24-25).

Nurse Foley treated Plaintiff for his migraines twice a month in 2019. (R. at 306.) She indicated that Plaintiff experiences headaches three to five days per week, which last for a "few hours to days" each time. (R. at 307.) She indicated that Plaintiff has "frontal-right side [headaches] with sensitivity to light and noise" and some nausea, which cause him moderate to severe pain. (R. at 306-07.) Further, she reported that Plaintiff failed two "classes of preventative medication," but takes other medications to mitigate the pain. (R. at 308-09.) She also articulated that Plaintiff's migraines were triggered by bright lights, lack of sleep, noise, stress, strong odors, and extreme temperature changes. (R. at 307.) As a result, she opined that Plaintiff must be limited in his exposure to fumes and gases, noise, and extreme temperature changes. (R. at 310.)

In addition to Plaintiff's diagnoses of migraines and neuralgia, Nurse Foley indicated that Plaintiff suffered from psychophysiologic insomnia. (R. at 306.) She identified impaired sleep as an objective sign of Plaintiff's headaches. (R. at 308.) Based on her review of Plaintiff's symptoms, Nurse Foley opined that Plaintiff would miss work four times a month due to his headaches. (R.

at 309-10). Additionally, he will need three or more unscheduled breaks of unknown duration during the eight-hour workday. (R. at 309-10.)

The ALJ found Nurse Foley's opinion to be unpersuasive, in part because Nurse Foley did "not cite any objective evidence to support her vague conclusions, other than the claimant's diagnoses, and she did not offer specific, function-by-function limitations, in vocationally relevant terms." (R. at 23.) Thus, Plaintiff contends that the ALJ committed error by rejecting Nurse Foley's opinion: (1) based on the absence of objective medical evidence and (2) for vagueness. The Court will address these assignments of error in two parts.

   a.   *Lack of Objective Evidence of Migraines.*

Courts within the Fourth Circuit have recognized that a lack of objective evidence[8] for migraines is not a basis alone to discount a claimant's complaints. *See Cox v. Saul*, Civil Action No. 4:19-cv-02717-TER, 2021 U.S. Dist. LEXIS 49197, at *14 (D.S.C. Mar. 16, 2021) (citing *Robinson v. Colvin*, 31 F. Supp. 3d 789, 793 n.1 (E.D.N.C. 2014)). Because migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing, an ALJ's reliance on normal imaging "merely suggests that the cause of [a claimant's] headaches cannot be identified through such testing, not that [the claimant] does not suffer from headaches . . . ." *Harrington v. Colvin*, No. 7:15-CV-00020-FL, 2016 U.S. Dist. LEXIS 8177, 2016 WL 320144, at *4 (E.D.N.C. Jan. 4, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 8175, 2016 WL 311284 (E.D.N.C. Jan. 25, 2016); *see Cox v. Saul*, Civil Action No. 4:19-cv-02717-TER, 2021 U.S. Dist.

---

[8] Objective medical evidence is defined as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [one's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g).

LEXIS 49197, at *13 (D.S.C. Mar. 16, 2021) (reversing and remanding the Commissioner's decision based, in part, on the ALJ's failure to account for the claimant's headaches in the residual functional capacity analysis because they were unsubstantiated by exams and imaging).

In this case, the ALJ found Nurse Foley's opinion "of limited probative value for assessing the claimant's residual functional capacity." (R. at 23.) She did not dismiss Nurse Foley's opinion altogether based on the lack of objective evidence supporting Plaintiff's reported pain. In fact, the ALJ accounted for Plaintiff's migraine pain in her residual functional capacity analysis by limiting Plaintiff to "occasional exposure to vibration and hazards" and to environments "with moderate noise intensity level[s] . . . [and] levels of illumination similar to those in a typical office setting" to account for his sensitivity to bright light. (R. at 24.) Therefore, the Court finds no error in the ALJ's reasoning to the extent that she discounted Nurse Foley's opinion for lack of objective evidence, but nonetheless included it in her residual functional capacity analysis.

    b.  *Vagueness in Nurse Foley's Opinion.*

Plaintiff asserts that it was erroneous for the ALJ to find Nurse Foley's limitations to be "vague" and not expressed in "vocationally relevant terms." (Pl.'s Mem. at 9 quoting R. at 23.) The ALJ explained that Nurse Foley's opinions were vague because they did not offer "function-by-function limitations, in vocationally relevant terms." (R. at 23.) This explanation must be viewed in association with the remainder of the written decision, which included opinions from other medical professionals that gave the ALJ estimated projections of Plaintiff's ability to lift and carry, stand and/or walk, and engage in postural activities. (*See e.g.* R. at 22). As a result, the ALJ found Nurse Foley's opinion to have limited probative value for assessing Plaintiff's residual functional capacity. (R. at 23.) Despite this finding, the ALJ still incorporated the limitations assessed by Nurse Foley in the ALJ's residual functional capacity analysis. (R. at 23.)

To the extent that the ALJ found Nurse Foley's opinion "vague" and "broad," the Court finds no reversible error. Therefore, the ALJ properly assessed Nurse Foley's opinion in accordance with the regulations.

### C. The ALJ Properly Considered Plaintiff's Physical Pain.

Lastly, Plaintiff asserts that the ALJ committed reversible error by failing to account fully for the time Plaintiff would be off task due to his migraine headaches. (Pl.'s Mem. at 10). Defendant responds that the record does not support that Plaintiff had an inability to concentrate requiring him to be off task or perform unskilled work. (Def.'s Mem. at 25).

The ALJ found at step two that Plaintiff's headaches were a severe physical impairment under 20 C.F.R. § 404.1520(c). In her residual functional capacity assessment, the ALJ accounted for Plaintiff's migraines by restricting him to work environments without excessive noise, sound, and light. (R. at 24.) She considered Plaintiff's "disorientation and fatigue from migraine headaches" when she determined his residual functional capacity but explained that the "totality of the evidence does not support greater limitations." (R. at 24.)

The Court does not find that the ALJ erred in failing to include the time Plaintiff would be off task because the record does not support the inclusion of any such mental limitations in the residual functional capacity analysis. Although Plaintiff points to Nurse Foley's contention that one of the symptoms associated with Plaintiff's migraines was "inability to concentrate," the ALJ's assessment of Plaintiff's limitations with respect to concentration, persistence, or pace (ability to stay on task) does not indicate that Plaintiff would be off-task while in a work setting. (Pl.'s Mem. at 10) (R. at 24.) Therefore, the Court does not find that the ALJ erred by failing to account for the amount of time that Plaintiff's migraine pain would cause him to be off task.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) and Motion to Remand (ECF No. 23) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED; and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to Senior United States District Judge John A. Gibney, Jr.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: December 29, 2021